**James L. LOPATA**

v.

**BEMIS COMPANY, INC.**

**Civ. A. No. 72–1718.**

United States District Court,
E. D. Pennsylvania.

Oct. 16, 1974.

---

Richard H. Elliott, Philadelphia, Pa., for plaintiff.

Roger B. Wood, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Presently before the Court in this personal injury diversity action is the defendant's motion for summary judgment pursuant to F.R.Civ.P. 56. For the reasons which we set forth in this memorandum, defendant's motion will be granted.

The plaintiff, a Pennsylvania resident, was injured at his employer's plant in New Jersey on February 2, 1971, while he was attempting to unjam an allegedly defective fiberglass insulation manufacturing machine. Excess rolls of insulation had accumulated at the end of the device causing a blockage which plaintiff tried to free. In the process, a heavy steel gate struck his back, causing his injury. The machine in question had been manufactured by the Rock Wool Engineering and Equipment Company [Rock Wool].

Pursuant to an agreement executed on March 31, 1966, Rock Wool sold the bulk of its assets to the defendant, Bemis Company, Inc. [Bemis].[1] Thereafter, Bemis continued to manufacture machines similar to the one which plaintiff asserts was defective and supplied former Rock Wool customers with spare parts. Subsequently, in accordance with the agreement, Rock Wool changed its corporate name to Overman & Shovlin and eventually dissolved in late April, 1967, under the applicable provisions of Indiana law.

The thrust of plaintiff's claim is that the liability of Rock Wool for the injury caused by the allegedly defective machine attaches to the defendant, Bemis, as the successor in interest to Rock Wool. Several arguments are advanced to support this claim: (1) under the agreement, defendant Bemis impliedly assumed liability for injuries such as the one in question; (2) defendant Bemis was a mere continuation of the selling corporation and, therefore, must answer for the injuries caused by its product; and, (3) the transaction in question constituted a *de facto* merger. Defendant, on the other hand, asserts that the transaction simply constituted a purchase of assets, and the clear, expressed terms of the agreement negatived any intent on the part of the defendant to assume liability for injuries such as plaintiff suffered.

F.R.Civ.P. 56(c) provides that summary judgment

"* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

We are thus initially required to determine whether there is any genuine issue

---

1. Paragraph 2 of the "Agreement for the Purchase of Certain Assets of Rock Wool Engineering and Equipment Company, Inc. by Bemis Company, Inc." [agreement] listed these assets, which included all inventory and work in progress; accounts receivable; engineering, shop, office, demonstration and test machinery and equipment (excluding ve-

hicles); and patents, patent applications, inventions, discoveries, designs, shop rights, processes, formulae, patent licenses, trademarks and "Account with Indiana Employment Security Division". Approximately 475 different pieces of furniture, office and shop equipment, machinery and tools, listed on Exhibit A to the agreement, were included.

as to any material fact at this stage of the case. Lockhart v. Hoenstine, 411 F. 2d 455 (3d Cir.), cert. denied 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). The movant has the burden of showing the absence of a material fact to be tried. Adickes v. Kress and Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). We are persuaded that there is no substantial dispute as to any material fact. Defendant has submitted two affidavits which set forth in detail the exact terms of the agreement and all the attendant arrangements. In addition, the procedural posture of this case renders irrelevant details of the injury and the condition of the allegedly defective machine.

Since there is no genuine issue as to any material fact, we proceed to the legal issues. The controlling legal principles governing this case are set forth in Shane v. Hobam, Inc., 332 F.Supp. 526 (E.D.Pa.1971). In *Shane*, Judge Higginbotham expostulated on the assumption of liability by a purchasing corporation as follows:

"The general rule is that 'a mere sale of corporate property by one company to another does not make the purchaser liable for the liabilities of the seller not assumed by it.' Copease Mfg. Co. v. Cormac Photocopy Corp., 242 F.Supp. 993 (S.D.N.Y.1965). [footnote omitted] There are, however, certain exceptions to this rule. Liability for obligations of a selling corporation may be imposed on the purchasing corporation when (1) the purchaser expressly or impliedly agrees to assume such obligations; (2) the transaction amounts to a consolidation or merger of the selling corporation with or into the purchasing corporation; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for such obligations. Kloberdanz v. Joy Manufactur-

ing Co., 288 F.Supp. 817, 820 (D.Col. 1968)" 332 F.Supp. at 527–528.

Here, plaintiff has made no allegation that the transaction was entered into fraudulently by Rock Wool in order to escape liability. For our purposes, then, we must consider the applicability of the other three exceptions to the facts in this case.

Plaintiff contends that the defendant impliedly assumed the liability here in question by reason of the following language of paragraph 7 of the agreement.

"7. The Company [defendant] shall not assume any liabilities of the seller [Rock Wool] nor take the assets subject to any liabilities whether fixed or contingent, known or unknown, except as specifically provided hereafter.

\* \* \* \* \* \*

[list of specifically assumed liabilities which are not germane here]

"(g) Except as above provided [Rock Wool] will indemnify and hold [Bemis] harmless from any liabilities of [Rock Wool] or claims therefor, or loss, cost or expenses in connection therewith not specifically assumed by [Bemis]."

The fact that Rock Wool agreed to indemnify and hold the defendant harmless from liabilities cannot be construed as an implied assent by Bemis to assume the liability in question. The express language of the agreement precludes this interpretation. Moreover, similar contractual language was construed in Shane v. Hobam, *supra*, to exclude any implied assumption of liabilities. In addition, the gravamen of plaintiff's claim is that the total effect of the transaction was to denude the contractual language of its express meaning.[2] Thus, we conclude that the agreement itself does not support plaintiff's assertion.

The plaintiff next argues that the transaction constituted a merger or consolidation of Rock Wool into or with

2. See plaintiff's brief at pp. 3, 4.

the defendant so as to fall within the second exception to the general rule. Specifically, plaintiff contends that the transaction here resulted in a *de facto* merger, citing Farris v. Glen Alden, 393 Pa. 427, 143 A.2d 25 (1958).[3] With this, we do not agree. In *Farris, supra,* the Court stated:

> " \* \* \* [W]hen a corporation combines with another so as to *lose its essential nature and alter the original fundamental relationships of the shareholders among themselves and to the corporation,* a shareholder who does not wish to continue his membership therein may treat his membership in the original corporation as terminated and have the value of his shares paid to him." 393 Pa. 433, 143 A.2d 29 [emphasis added.]

In the instant case, no basic fundamental change in the relationship of the stockholders to their respective corporations occurred and without this essential element, the *de facto* merger argument must fail. *A fortiori,* without any legal change in the ownership configuration of the two corporations, the contention that a merger or consolidation has occurred also fails. Freeman v. Hiznay, 349 Pa. 89, 36 A.2d 509 (1944). *See also* Kloberdanz v. Joy Mfg. Co., 288 F. Supp. 817 (D.Col.1968); National Dairy Products Corp. v. Borden Company, 363 F.Supp. 978 (E.D.Wisc.1973); Bazan v. Kux Machine Company, 358 F.Supp. 1250, 1252 (E.D.Wisc.1973).

█ Finally, we consider the argument that Bemis was a mere continuation of the selling corporation. This same contention was made in National Dairy Products Corp. v. Borden Company, *supra,* where the Court concluded that the mere continuation of the business of the selling corporation by the purchasing corporation without any apparent change was not enough to consti-

tute a "continuation" within the exceptions set forth above.

> "The test is not the continuation of the business operation but the continuation of the corporate entity." 363 F.Supp. 980.

There, the purchaser not only continued to operate the business which the seller had previously conducted, but also used the same name, at the same location, and a majority of its personnel in that operation were former employees of the selling corporation. In *Kloberdanz* the Court held that a continuation contemplates a common identity of stock, directors, stockholders and the existence of only *one* corporation at the completion of the transfer. The only evidence which plaintiff has proffered to meet these criteria is that Thomas Shovlin, a director and vice president of Rock Wool, later became product manager for the defendant. This, however, is not enough. Not only did Rock Wool continue to enjoy an independent corporate existence unfettered by the transaction, but more importantly, and seemingly fatal to the plaintiff's contention, there was no interchange of stock or change in the basic ownership of either corporation. The name change and ultimate dissolution of Rock Wool more than a year later are not controlling. *See Kloberdanz, supra.* This leaves the inescapable conclusion that the general rule as stated in *Shane, supra,* applies in this case.

█ Finding no genuine issue as to any material fact and concluding as a matter of law that the transaction in question did not fall into any one of the four exceptions to the general rule that a mere sale of corporate assets does not make the purchaser liable for unassumed liabilities, this Court must grant summary judgment in favor of the defendant.

---

3. *Farris* involved a question of the rights of a dissenting stockholder when a major corporate reorganization was contemplated, an issue not relevant to the case at bar.